## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| LEAFFILTER NORTH, INC.<br>1595 Georgetown Road, Suite G<br>Hudson, Ohio 44236<br><br>   Plaintiff,<br><br>v.<br><br>JAMES C. CALDWELL<br>424 Cornwall Drive<br>Ruther Glen, VA 22546<br><br>-and-<br><br>SHANNON CALDWELL<br>424 Cornwall Drive<br>Ruther Glen, VA 22546<br><br>-and-<br><br>DAVID C. WRIGHT<br>364 Milbrook Terrace NE<br>Leesburg, VA 20176<br><br>-and-<br><br>GUTTER GLOVE EAST, LLC<br>c/o Registered Agent<br>4445 Corporation Lane, Suite 264<br>Virginia Beach, VA 23462<br><br>   Defendants. | CASE NO.:<br><br>**JUDGE**<br><br><br>**VERIFIED COMPLAINT FOR<br>INJUNCTIVE RELIEF AND<br>OTHER EQUITABLE RELIEF AND<br>LEGAL DAMAGES** |

NOW COMES Plaintiff, LeafFilter North, Inc. and for its complaint against Defendants

Gutter Glove East, LLC, Shannon Caldwell, James Christian Caldwell and David C. Wright attests

and states as follows:

## JURISDICTION, PARTIES AND VENUE

1.      Federal question is proper herein under 28 U.S.C. §1331.

2.      Supplemental Jurisdiction is proper for all state claims and parties under 28 U.S.C. §1367.

3.      Personal Jurisdiction is proper under the forum selection clause in "Exhibit 1," Caldwell's Non-Competition, Confidentiality and Arbitration Agreement, and "Exhibit 2," David Wright's Non-Competition, Confidentiality and Arbitration Agreement (hereinafter "the Agreements"); Ohio's Long Arm Statute, ORC §§ 2307.382 *et seq*., and under the laws of Federal Due Process.

4.      Plaintiff, LeafFilter North, Inc. (hereinafter "LeafFilter"), is a corporation duly incorporated in the State of Ohio with its principal place of business in Summit County, Ohio. LeafFilter is a gutter protection company that has been in business since 2005.

5.      Defendant James Christian Caldwell and Defendant Shannon Caldwell (hereinafter "Chris Caldwell," "Shannon Caldwell," or collectively the "Caldwell Defendants") are individuals who are domiciled at 424 Cornwall Drive, Ruther Glen, Virginia.

6.      Defendant David C. Wright (hereinafter "David Wright") is an individual who is domiciled at 364 Millbrook Terrace NE, Leesburg, VA 20176.

7.      Venue is proper in that Chris Caldwell, David Wright, and LeafFilter agreed to a forum selection clause that states federal court in Summit County, Ohio is the chosen venue for any action relating to the employment agreements both executed in January of 2015, copies of which are attached hereto as "Exhibit 1" and "Exhibit 2."

8.      Venue is conferred in this Court pursuant to 28 U.S.C. § 1391 for all other defendants and causes of actions not otherwise covered by the forum selection clause.

2

## FACTUAL ALLEGATIONS

9.    LeafFilter sells and markets LeafFilter® in various markets throughout the United States.

10.    The gutter protection industry is competitive in that LeafFilter has dozens of competitors in the Virginia market.

11.    LeafFilter® is a gutter guard protection system that uses a stainless steel micro filter that prevents debris from entering a gutter.

12.    LeafFilter spends significant resources in relation to its marketing efforts and business processes.

13.    Matt Kaulig started his company as a dealer for the LeafFilter® product in 2005 by selling it out of his home.

14.    Over the past 11 years, Mr. Kaulig has grown his business to 29 offices throughout the United States, with corporate offices based in Hudson, Ohio, where it employs approximately 290 individuals.

15.    LeafFilter now holds the rights to market and distribute LeafFilter® throughout the world.

16.    LeafFilter's satellite offices have a Marketing Manager, Installation Manager, and Operations Manager.

17.    LeafFilter obtains a significant portion of its business through event marketing.

18.    A LeafFilter representative, including the Marketing Manager, attends home improvement shows, fairs, or other public events and interacts with attendees to determine if they would like to sign up for a free estimate.

19.     Once a lead is obtained, an appointment is set by LeafFilter's call center employees in its Hudson, Ohio office, and a sales representative provides customers with an in home demonstration of the product.

20.     Defendant Chris Caldwell worked for LeafFilter as a sales representative from approximately March 2013 until March of 2014 in North Carolina.

21.     In March of 2014, Defendant Chris Caldwell began his employment with LeafFilter as Operations Manager for its Fredericksburg, Virginia office.   In 2014, Caldwell earned approximately $132,000.00.  In 2015, Caldwell earned $175,000.00.  In 2016, at the time of his resignation, Caldwell had earned approximately $50,248.13.

22.     As operations manager, it was Defendant Chris Caldwell's responsibility to oversee LeafFilter's entire operations in that territory and ensure that the office was meeting its sales goals and addressing various issues in relation to LeafFilter's customers and workers.

23.     Prior to working for LeafFilter, Chris Caldwell was a machinist and had no knowledge of the home improvement business, event marketing, home sales, gutter protection, gutter protection installation, the gutter protection market place or how to obtain and process potential customers to convert sales.  James Caldwell Application attached hereto as "Exhibit 3."

24.     After hire, Chris Caldwell underwent significant training both in relation to all products in the gutter protection market place, home improvement industry marketing and sales, event marketing, in home sales, sales management and training.  Chris Caldwell was also provided with access to LeafFilter's customer and lead data and how such data is used to increase sales and revenues.   But for LeafFilter's training Chris Caldwell had no other experience or training in the home improvement business, much less the gutter protection business.

4

25.     Defendant David Wright began his employment with LeafFilter on March 5, 2013 as the Marketing Manager for LeafFilter's Fredricksburg office.

26.     As Marketing Director, Defendant David Wright was required to attend trade shows, fairs and festivals (collectively referred to hereafter as "shows") throughout his territory to obtain leads from consumers who are interested in LeafFilter's gutter protection systems for their homes.

27.     Additionally, Defendant David Wright was tasked with determining what events in the market LeafFilter should attend.  Defendant David Wright researched shows for LeafFilter to attend in the future by using LeafFilter's extensive database that it has developed through years of attending such shows at an extensive cost.  The database demonstrates not only which shows are productive in terms of raw leads but also demonstrates whether the leads obtained were fruitful and produced sales. Based on information and belief, David Wright, Chris Caldwell, Shannon Caldwell and Gutter Glove East, LLC have used said confidential show information to decide what shows to attend to obtain leads for its competing business.

28.     Prior to working for LeafFilter, David Wright had no experience in event marketing, no experience in the home improvement industry, and no experience in the gutter protection business.  David Wright was working for a theater and sold advertising.   See David Wright Resume attached hereto as "Exhibit 4."

29.     LeafFilter provided Mr. Wright with significant product, supervisory and marketing training both in the Fredricksburg Virginia office and at LeafFilter's Hudson, Ohio offices.

30.     Wright was trained regarding all the products in the market; how to properly recruit independent contract marketers; obtaining and attracting quality leads at events; event scheduling;

5

providing event marketers with industry product information; among other necessary skills to be successful in gutter protection business.

31.     Defendant David Wright was also required to schedule independent professional event marketers to attend such shows to obtain customer leads, maintain show and labor budgets, and perform various other duties.

32.     Throughout their employment at LeafFilter both Defendants Chris Caldwell and David Wright attended various training and sales meetings at LeafFilter's headquarters in Hudson, Ohio.

33.     Both David Wright and Chris Caldwell have been exposed to LeafFilter's general pricing and pricing for specific customers.

34.     LeafFilter stores its confidential information on servers located in Hudson, Ohio and authorizes its employees and agents to access such information via the internet using passwords.

35.     Based on information and belief, Chris Caldwell and David Wright are using LeafFilter's confidential pricing information to compete against LeafFilter.

36.     LeafFilter has spent years and millions of dollars to develop its training, business processes, customer databases, and lead databases.

37.     LeafFilter stores its customer and potential customer information on a database.  A lead is put into the database and information regarding the lead is also entered, including the name, address, telephone number, and specifically what issues that individual was having with their gutters, among other information.  Once the lead is contacted, the LeafFilter database states whether a sales appointment was set.  If an appointment is set, the database discloses whether the product was sold and at what price.  In addition, the database states the final price offered to an

individual if he or she did not purchase the product.   LeafFilter employees throughout the country are given passwords and made to sign similar non-disclosure Agreements as those entered into in this matter to be permitted to access this confidential and proprietary information.

38.     When an Operations Manager or Event Marketer leaves his or her position, it takes approximately a year to replace them and bring in a new employee who then needs to potentially be trained regarding the gutter protection business, must learn a new market, and new processes and systems.  During this time, if such an individual is permitted to use LeafFilter's information and processes, it constitutes unfair competition.

## **THE AGREEMENTS**

39.     Both Defendants Chris Caldwell and David Wright as a condition of employment were required to enter into the Agreements attached hereto as Exhibits 1 and 2 in January 2015.

40.      Both Defendants Chris Caldwell and David Wright previously had signed similar agreements at the outset of their employment, but the company had updated its agreements.  Both Chris Caldwell and David Wright were provided with consideration in the form of a gift card to enter into the Agreements.

41.     Defendant David Wright executed his Agreement on January 30, 3015, whereas Defendant Chris Caldwell executed his Agreement on January 14, 2015.

42.     The Agreements provide, inter alia, that Defendants Chris Caldwell and David Wright agreed that during their employment and for a period of one (1) year thereafter, (1) will not solicit LeafFilter's customers, either independently or as an employee or agent of any business solicit LeafFilter's customers for the purpose of offering a competing product or service; (2) engage in any conduct that does or reasonably could damage the relationship between LeafFilter and its customers or prospective customers; (3) not solicit LeafFilter's employees or agents to

leave their employment or separate their relationship with LeafFilter; or (4) compete with LeafFilter in the gutter protection business within the State in which they were employed, within 200 miles of a LeafFilter office.

43.     The Agreements also provided that Defendants Chris Caldwell and David Wright would not disclose, misuse, release either for their own benefit or the benefit of another person, business entity, firm, etc. any of LeafFilter's Confidential Materials.  Confidential Materials included, *inter alia*, trade secrets (as defined by Ohio law), confidential information; proprietary information, customer lists, records, and other information regarding customers; price lists and pricing policies; ledgers and information; sales and marketing plans; data and policies.

44.     Both Defendants Chris Caldwell and David Wright agreed that not only would they themselves not disclose such Confidential Materials, compete, solicit, etc., but that they would also not assist any other individual or entity from doing so.

45.     Defendants Chris Caldwell and David Wright agreed the proper forum for any action brought pursuant to the Agreements is Summit County, Ohio and that Ohio law would apply.

## GUTTER GLOVE EAST, LLC

46.     Based on information and belief, at some time in the fall of 2015, Defendants Chris Caldwell and his wife Shannon Caldwell became dealers for Gutterglove.

47.     Gutterglove, Inc. is a company that sells its product Gutterglove through a dealer network across the United States.

48.     Based on information and belief, dealers are granted exclusive territory rights to sell Gutterglove.

8

49.     Gutterglove, like LeafFilter® is a gutter protection system, which contains a micro mesh filter that when installed prevents debris from clogging gutters.

50.     Gutterglove is a competitor of LeafFilter.

51.     Based on information and belief, after becoming dealers for Gutterglove, Defendant Chris Caldwell, his wife Defendant Shannon Caldwell and Defendant David Wright began to actively compete against LeafFilter.

52.     Based on information and belief, the Caldwell Defendants and David Wright began to attend various events to obtain leads and were successful in obtaining leads.

53.     Based on information and belief, the Caldwell Defendants and Defendant David Wright, contacted the leads they obtained and went on sales calls and sold Gutterglove to potential LeafFilter customers.

54.     Based on information and belief, the Caldwell Defendants and Defendant David Wright diverted leads from LeafFilter to their business.

55.     Based on information and belief, the Caldwell Defendants and Defendant David Wright have used LeafFilter's customer database to send direct mailing to prospective customers of LeafFilter.

56.     Based on information and belief, Defendant Chris Caldwell without authority or authorization gave Defendant Shannon Caldwell on behalf of Gutter Glove East, LLC unauthorized access to his LeafFilter password that allowed her to gain unauthorized and illegal access to LeafFilter's computer systems to obtain and use LeafFilter's proprietary and confidential information that resides on LeafFilter's servers in Hudson, Ohio.

57.     Based on information and belief, on or about March 25, 2016, the Caldwell Defendants and Defendant David Wright formed Gutter Glove East, LLC, and its only purpose is

9

to sell and market Gutterglove. *See* State of Virginia Business Entity Details and Articles of Organization attached hereto as "Exhibit 5."

58.     Based on information and belief, the Caldwell Defendants and David Wright have diverted customers from LeafFilter to Gutter Glove East, LLC.  David Wright's wife has been paid for his portion of the Gutter Glove East, LLC proceeds, as has Shannon Caldwell for her husband's portion.

59.     LeafFilter event sales in Chris Caldwell's and David Wright's Market, Virginia, have fallen year to date by 38%.   Leads obtained at events have fallen year to date by 39%.

## GUTTER GLOVE EAST, LLC IS DISCOVERED BY LEAFFILTER

60.     In March of 2016, the Caldwell Defendants and Defendant David Wright approached Nicole Wright, who is no relation to Defendant David Wright, a LeafFilter Marketing contractor about performing work for Gutter Glove East, LLC.

61.     David Wright and Defendant Chris Caldwell requested that Nicole Wright attend events on behalf of Gutter Glove East, LLC and obtain leads.

62.     When Nicole Wright was apprehensive, Defendants David Wright and Chris Caldwell assured her that because she was a contactor there was no issue with her attending shows on behalf of another gutter protection company.

63.     Because Nicole Wright believed that Defendant David Wright controlled whether she would be granted contracts with LeafFilter, she felt that she had no other choice but to comply with his requests.

64.     Nicole Wright attended the King George Home Show and the Shenandoah Valley Builders Association Home Show, both located in Virginia on behalf of Gutter Glove East, LLC,

Chris Caldwell and David Wright.  Chris Caldwell and David Wright demonstrated the Gutterglove product for Nicole Wright at LeafFilter's Virginia office.

65.     Nicole Wright obtained leads at those shows for Gutterglove.

66.     Nicole Wright was directed to contact those leads as well as other leads that were obtained by other event marketers to attempt to set appointments.

67.     Nicole Wright was offered an hourly wage to attend the trade shows at the same rate that LeafFilter compensated her.  Also she was offered $10 for every lead that she converted to an appointment and if there was a sale, she was promised $30.

68.     In addition to Nicole Wright, Reza Haeri, who was also a LeafFilter Marketer, was approached by both Defendant Chris Caldwell and Defendant David Wright and performed work for Gutter Glove East, LLC.

69.     In April of 2015, Nicole Wright was approached by Defendant Chris Caldwell who discussed the possibility of her working at his home for a couple days a week helping Defendant Shannon Caldwell and him with Gutterglove business.  Defendant Chris Caldwell offered Nicole Wright $150.00 a week.

70.     Nicole Wright went to Defendant Chris Caldwell's home twice in April.  Nicole Wright became very uncomfortable when she found that the Caldwell Defendants were using Chris Caldwell's LeafFilter password to access LeafFilter records and use them for the benefit of Gutter Glove East, LLC.

71.     LeafFilter has confidential trade secret records of all of its leads, where they were obtained, if a sales appointment was set, and if such appointment was set, what the result of that appointment was.

11

72.     The Caldwell Defendants and Defendant David Wright were using this information to send direct mailers to individuals who had invited LeafFilter out for a sales call but did not buy its product.

73.     The Caldwell Defendants had actually printed out a list of such individuals.

74.     Both Defendant Chris Caldwell and Defendant Shannon Caldwell have email addresses for Gutter Glove East, LLC. Chris@guttergloveeast.com and shannon@guttergloveeast.com.

75.     After seeing the information being used by the Caldwell Defendants, Nicole Wright felt uncomfortable with this arrangement and decided not to proceed with it.

76.     In and around May 15, 2016, Nicole Wright contacted David Wright via text message, to ask if he wanted some leads she had obtained while employed with another competitor that had gone out of business to use to assist LeafFilter because Virginia's office numbers were down.  Instead of requesting that she do so, David Wright inquired whether she had contacted those leads and attempted set them for Gutterglove.   Text Messages attached hereto as "Exhibit 6" at pages 4-5.

77.     On May 23, 2016, Defendant David Wright contacted Nicole Wright and requested that she attend the Richmond Home-a-rama located in Richmond Virginia on behalf of Gutter Glove East, LLC.

78.     At this point, Nicole Wright decided that she would need to alert LeafFilter to Defendants David Wright and Chris Caldwell's actions.

79.     Nicole Wright also performed work out of LeafFilter's Maryland Office in Lincecum, Maryland.

80.    Cary Loeser was Defendant David Wright's counterpart in the LeafFilter's Maryland Office and worked with Nicole Wright as well.

81.    Nicole Wright was working a show in Maryland on Saturday, May 28, 2016 and decided to stop by the office to have lunch with Mr. Loeser on May 27, 2016.

82.    At lunch Nicole Wright explained to Mr. Loeser what the Caldwell Defendants and Defendant David Wright had been doing.

83.    Mr. Loeser requested that Nicole Wright provide information to confirm her allegations and she provided him with various text messages and also texted Defendant Chris Caldwell the following:  "Hey there! I'm out of town but someone from home was asking about what the gg website is.  What's the webaddress?" See text messages attached hereto as "Exhibit 6."

84.    To which Defendant Chris Caldwell replied:  Gutter Glove East LLC, Fredricksburg, Spotsylvania, Virginia, Welcome, www.guttergloveeast.com. See printouts of website attached hereto as "Exhibit 7."

85.    Defendant Chris Caldwell also stated in the May 27, 2016 text that "I told Dave I wanted to start doing one a week." Referring to events.

86.    Mr. Loeser notified his Operations Manager Bob Haire, who on May 30, 2016, notified LeafFilter's Vice President of Sales, Chris Counahan. See email from Haire to Counahan attached as "Exhibit 8."

87.    Mr. Counahan notified Mr. Kaulig who, given the holiday, organized a teleconference for the first thing Tuesday morning, May 31, 2016.

88.    Defendant Chris Caldwell texted his resignation on the morning of May 31, 2016 at approximately 6:30 a.m.

89.     Defendant David Wright was terminated following the teleconference.  Defendant David Wright denied working with Defendant Chris Caldwell for Gutterglove and claimed that Nicole Wright was not telling the truth.

90.     Mr. Kaulig and others in LeafFilter management decided that Nicole Wright was credible and her statement was supported by text messages to and from Defendant David Wright.

91.     Chris Caldwell and David Wright continue to operate Gutter Glove East, LLC and sell gutter protection.

92.     Said conduct by the Caldwell Defendants and Defendant David Wright has caused and continues to cause LeafFilter damages in lost profits, good will, lost opportunities.

## FIRST CLAIM FOR RELIEF

93.     Plaintiffs incorporate as if fully rewritten herein all of the allegations contained in paragraphs 1 through 92 above.

94.     The actions and conduct engaged in by Defendants David Wright and Chris Caldwell result in an intentional, knowing and ongoing breach of the Agreement and the covenants they knowingly and voluntarily entered into, including but not limited to his divulging, disseminating and disclosing LeafFilter Confidential Information; calling on, soliciting, contracting with, performing services for and otherwise transacting business with LeafFilter customers and potential customers; directly creating, operating and working for a business, Gutter Glove East, LLC which competes directly with LeafFilter within Virginia; inducing, attempting to induce or assisting others to induce or attempt to induce LeafFilter employees to perform work for Gutter Glove East LLC; and otherwise taking action to circumvent the restrictions they voluntarily accepted and taking actions having an adverse effect on LeafFilter's business.

95.     Unless Defendants Chris Caldwell and David Wright are restrained from continuing to violate the covenants to which they agreed in the Agreements, LeafFilter will continue to suffer irreparable damages for which LeafFilter has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**

96.     LeafFilter incorporates Paragraphs 1 through 95 of this Complaint as if fully rewritten herein.

97.     As Operations Manager and Marketing Manager, Defendants Chris Caldwell and David Wright owed LeafFilter a duty of good faith and loyalty during his employment by LeafFilter.

98.     Defendants Chris Caldwell and David Wright breached that duty of loyalty by forming Gutter Glove East, LLC and by competing directly with LeafFilter while still employed by LeafFilter.

99.     Defendants Chris Caldwell and David Wright did not act with good faith and loyalty while discharging his duties as General Manager when employed by LeafFilter.

100.     Defendants Chris Caldwell and David Wright are entitled to no compensation, even for properly performed services for which no compensation is apportioned, for the time in which he willfully and deliberately breached his duty of loyalty and obedience to LeafFilter by assisting Gutter Glove East, LLC.

101.     As a direct and proximate result of the foregoing dishonesty and disloyal conduct, the Defendants Chris Caldwell and David Wright are required to disgorge his earnings and compensation received from LeafFilter during the period of his dishonesty, disloyalty and/or faithlessness.

## THIRD CLAIM FOR RELIEF

102. LeafFilter incorporates Paragraphs 1 through 101 of this Complaint as if fully rewritten herein.

103. As an employee of LeafFilter, Defendants Chris Caldwell and David Wright were privy to a broad range of proprietary and confidential information and documents which constitute "trade secrets" as defined by Section 1333.6l (D) of the Ohio Revised Code, including but not limited to, customer lists, customer information, potential customer information, financial information, records, products, methods of operation, pricing strategy, customer preferences, marketing efforts, corporate strategies, customer needs and all other proprietary and confidential information and documentation belonging to LeafFilter.

104. Over the course of its existence, LeafFilter has incurred significant costs in the creation and development of this proprietary, confidential, and trade secret information and documentation, and such information would be acquired and duplicated by third parties only through significant expense and effort.

105. These trade secrets of LeafFilter are not known to or able to be ascertained by third persons through proper means.

106. LeafFilter has used and continues to use reasonable efforts and precautions to maintain the secrecy of its trade secret information to prevent the use or disclosure of such information to third parties, including but not limited to limiting access and distribution of information and establishing procedures to prevent the disclosure of information to third parties.

107. LeafFilter derives independent economic value, both actual and potential, by preventing the use, disclosure, and dissemination of its trade secret information to third parties and such information provides LeafFilter with a competitive advantage over other persons and

companies who compete with LeafFilter.

108.    Upon information and belief Defendants Chris Caldwell, Shannon Caldwell, David Wright and Gutter Glove East, LLC obtained by improper means confidential and proprietary and trade secret information of LeafFilter for Defendants own interests and/or for the use of Gutter Glove East, LLC.

109.    The Defendants have misappropriated the trade secrets of LeafFilter in violation of the Uniform Trade Secrets Act, Section 1333.31 *et seq*. of the Ohio Revised Code.

110.    Defendants have disclosed LeafFilter's confidential, proprietary and trade secret information to Gutter Glove East, LLC with the knowledge of all Defendants that these trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

111.    At the time of such disclosure Gutter Glove East, LLC was aware that such information was derived from or through Defendants Shannon Caldwell, Chris Caldwell, and David Wright, a person who utilized improper means to acquire it and/or a person who owed a duty to maintain secrecy.

112.    This misappropriation and use of trade secrets by Defendants Chris Caldwell, Shannon Caldwell, and David Wright to Gutter Glove East, LLC was intentional, willful, malicious, and with actual knowledge that such acts and omissions violated Defendants Chris Caldwell and David Wright's obligations to LeafFilter under their Agreements.

113.    Defendants' misappropriation of trade secrets has caused LeafFilter to sustain significant financial losses and other damages in excess of $250,000.

114.    As a direct and proximate result of Defendants' intentional, willful, malicious and bad faith misappropriation and use of LeafFilter's trade secrets, LeafFilter is entitled to punitive

or exemplary damages and attorney fees pursuant to Sections 1333.63(B) and 1333.64 of the Ohio Revised Code.

## FOURTH CLAIM FOR RELIEF

115.    LeafFilter incorporates Paragraphs 1 through 114 of this Complaint as if fully rewritten herein.

116.    Nicole Wright witnessed Defendant Shannon Caldwell and Defendant Chris Caldwell use passwords provided by LeafFilter to Defendant Chris Caldwell in order to access information on LeafFilter's computer servers located in Hudson, Ohio.

117.    Defendant Chris Caldwell gave the password LeafFilter provided to him to his wife, Defendant Shannon Caldwell.

118.    Based on information and belief, Defendant David Wright also used passwords provided by LeafFilter to access information on LeafFilter's computer servers located in Hudson, Ohio.

119.    LeafFilter's servers accessed by the Defendants are used in and affect interstate commerce and communication as they are connected to the internet and facilitate the sale of goods throughout the United States.

120.    Defendant Shannon Caldwell, Defendant Chris Caldwell, and Defendant David Wright used the passwords as agents of Defendant Gutter Glove East, LLC and in an individual capacity.

121.    LeafFilter never authorized Gutter Glove East, LLC or its agents to use passwords to access information on its computer servers located in Hudson, OH. LeafFilter never authorized Defendant Shannon Caldwell, Defendant Chris Caldwell, or Defendant David Wright to use their passwords in the manner as witnessed by Nicole Wright or in any manner not directly related to

the Defendants' employment with LeafFilter.

122.    Defendants accessed LeafFilter's servers to obtain leads collected by LeafFilter at trade shows and to obtain information regarding the last offered price to the leads.

123.    Defendants used the information regarding the leads and the last offered price to undercut LeafFilter's business

124.    Defendants intentionally accessed LeafFilter's computers without authorization and/or exceeded the authorization from LeafFilter.

125.    Defendants knowingly and with intent to defraud accessed LeafFilter's servers without authorization and/or exceed their authorization to further their fraud and to obtain valuable information.

126.    Defendants intentionally accessed LeafFilter's servers without authorization, and as a result of such conduct, caused LeafFilter damage and loss as its information was compromised and suffered loss of sales in excess of $5,000.

127.    Defendant Chris Caldwell knowingly, and with intent to defraud, trafficked LeafFilter's passwords by providing his wife, Defendant Shannon Caldwell, with unauthorized access to LeafFilter's servers.

128.    As a result of the Defendants' conduct, they are in violation of the Computer Fraud and Abuse Act Sections 18 U.S.C. §§ 1030(a)(2), (4), (5), & (6)

## FIFTH CLAIM FOR RELIEF

129.    LeafFilter incorporates Paragraphs 1 through 128 of this Complaint as if fully rewritten herein.

130.    As an employee of LeafFilter, Defendants Chris Caldwell and David Wright were privy to a broad range of proprietary and confidential information and documents which constitute

"trade secrets" as defined by 18 U.S.C. § 1839(3), including but not limited to, customer lists, customer information, potential customer information, financial information, records, products, methods of operation, pricing strategy, customer preferences, marketing efforts, corporate strategies, customer needs and all other proprietary and confidential information and documentation belonging to LeafFilter.

131.    Over the course of its existence, LeafFilter has incurred significant costs in the creation and development of this proprietary, confidential, and trade secret information and documentation, and such information would be acquired and duplicated by third parties only through significant expense and effort.

132.    These trade secrets of LeafFilter are not known to or able to be ascertained by third persons through proper means.

133.    LeafFilter has used and continues to use reasonable efforts and precautions to maintain the secrecy of its trade secret information to prevent the use or disclosure of such information to third parties, including but not limited to limiting access and distribution of information and establishing procedures to prevent the disclosure of information to third parties.

134.    LeafFilter derives independent economic value, both actual and potential, by preventing the use, disclosure, and dissemination of its trade secret information to third parties and such information provides LeafFilter with a competitive advantage over other persons and companies who compete with LeafFilter.

135.    Upon information and belief Defendants Chris Caldwell, Shannon Caldwell, David Wright, and Gutter Glove East, LLC obtained by improper means confidential and proprietary and trade secret information of LeafFilter for Defendants own interests and/or for the use of Gutter Glove East, LLC.

136.    Defendants have misappropriated the trade secrets of LeafFilter in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

137.    Defendants have disclosed LeafFilter's confidential, proprietary and trade secret information to Gutter Glove East, LLC with the knowledge of all Defendants that these trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

138.    At the time of such disclosure Gutter Glove East, LLC was aware that such information was derived from or through Defendants Shannon Caldwell, Chris Caldwell and David Wright, a person who utilized improper means to acquire it and/or a person who owed a duty to maintain secrecy.

139.    This misappropriation and use of trade secrets by Defendants Chris Caldwell, Shannon Caldwell and David Wright to Gutter Glove East, LLC was intentional, willful, malicious, and with actual knowledge that such acts and omissions violated Defendants Chris Caldwell and David Wright's obligations to LeafFilter under their Agreements.

140.    Defendants' misappropriation of trade secrets has caused LeafFilter to sustain significant financial losses and other damages in excess of $250,000.

141.    As a direct and proximate result of Defendants' intentional, willful, malicious and bad faith misappropriation and use of LeafFilter's trade secrets, LeafFilter's is entitled to punitive or exemplary damages and attorney fees pursuant to 18 U.S.C. § 1836(3).

**WHEREFORE**, LeafFilter demands judgment that, Chris Caldwell and David Wright, jointly and severally, and all other persons and entities acting in concert with them, including but not limited to Shannon Caldwell and Gutter Glove East, LLC, be restrained and enjoined during the pendency of this action and be permanently restrained from committing, attempting to commit or

21

causing to be committed any of the following acts:

A.    Divulging, disseminating, disclosing and/or otherwise misappropriating Confidential Information as that term is defined in the Agreement;

B.    Competing directly or indirectly in Virginia or within 200 miles of any LeafFilter office in the gutter protection business.

C.    Calling on, soliciting, contracting with, performing services for or otherwise transacting business with any LeafFilter clients or potential clients as defined in the Agreement for the Noncompetition Period of 1 year beginning at the time such violation ceases;

D.    Inducing, attempting to induce or assisting others to induce any LeafFilter employee or worker to terminate his or her relationship with LeafFilter or otherwise interfere with any worker's relationship with LeafFilter;

E.    Taking any action that is designed, intended or might reasonably be anticipated to circumvent the restrictions in the Agreement or otherwise having any adverse effect on LeafFilter's business;

F.    Defendants Chris Caldwell and David Wright from continuing in the employment of or performing work on the behalf of Gutter Glove East, LLC or any like company which is in competition with LeafFilter.

G.    Violating the Uniform Trade Secrets Act, Section 1333.31 *et seq.* of the Ohio Revised Code;

H.    Violating the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*;

I.    Violating the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*;  and

J.    Any and all other action and/or conduct or relief as is justified under the

circumstances.

**WHEREFORE**, Plaintiff LeafFilter, further respectfully requests that this Court enter judgment in its favor and against the Defendants on the Complaint as follows:

1.     That this Court award LeafFilter its economic losses, including lost profits caused by breach of the Agreement in an amount in excess of $75,000.00 to be determined at trial;

2.     An award in excess of $75,000.00 in punitive and/or exemplary damages to include treble damages against Defendants pursuant to Section 1333.63(B) of the Ohio Revised Code;

3.     An award in an amount equal to the compensation paid by Plaintiff to Defendants Chris Caldwell and David Wright during the time in which they breached thier duty of good faith and loyalty;

4.     An award of compensatory damages against Defendants Chris Caldwell and David Wright in an amount in excess of $75,000.00 caused by their breach of their duty of loyalty;

5.     An award of punitive or exemplary damages and attorney fees pursuant to 18 U.S.C. § 1836(3); and

6.     An award of all attorney fees, expenses and costs incurred in this action pursuant to Section 1333.64 of the Ohio Revised Code and/or pursuant to paragraph 6 of the Agreement.

Further, LeafFilter demands that the Court award it such other relief as is and may be just, fair and equitable in this case.

Respectfully submitted,

s/ Ryan T. Neumeyer
Ryan T. Neumeyer (0076498)
Ross, Brittain & Schonberg Co., LPA
6480 Rockside Woods Blvd. South, Suite 350
Cleveland, Ohio 44131
Tel: 216-447-1551 / 216-447-1554
Email: ryann@rbslaw.com
        nickl@rbslaw.com

COUNSEL FOR PLAINTIFF, LEAFFILTER
NORTH, INC.

## **JURY DEMAND**

Plaintiff, by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 38, hereby
demands a trial by jury, to the maximum number of juror allowed by law, on all issues so triable.

s/ Ryan T. Neumeyer
Ryan T. Neumeyer (0076498)

COUNSEL FOR PLAINTIFF, LEAFFILTER NORTH, INC.

State of Ohio            )
                                    )     **VERIFICATION**

County of Summit     )

     I, Matt Kaulig, being first duly sworn according to law, deposes and says that he is President

of LeafFilter North, Inc. and that he has read the foregoing Verified Complaint for Injunctive Relief

and Other Equitable Relief and Damages and that the facts stated therein are true to the best of his

knowledge and belief.

     SWORN TO BEFORE ME AND SUBSCRIBED in my presence, this

6th day of June 2016.

Notary Public



RYAN T. NEUMEYER, Atty.
NOTARY PUBLIC • STATE OF OHIO
My commission has no expiration date
Section 147.03 O.R.C.